**UNITED STATES of America, Appellee,**

v.

**Sylvestre ACOSTA, also known as Sly Acosta, and Paul Skinner, Defendants–Appellants,**

**Gerald T. Skinner, Defendant.**

**Nos. 05–3346–cr(L), 05–3416–cr(CON).**

United States Court of Appeals, Second Circuit.

Nov. 30, 2006.

See also 470 F.3d 132.

Wan J. Kim, Assistant Attorney General (Jessica Dunsay Silver, Angela M. Miller, on the brief), Department of Justice, Washington, DC, for Appellee.

David J. Seeger (Leigh E. Anderson, on the brief), Buffalo, NY, for Defendant–Appellant Sylvestre Acosta.

Patrick J. Brown, LoTempio & Brown, P.C., Buffalo, NY, for Defendant–Appellant Paul Skinner.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. B.D. PARKER, Circuit Judge, and Hon. LOUIS F. OBERDORFER, District Judge.*

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

## SUMMARY ORDER

In a separate per curiam opinion filed today, we held that 18 U.S.C. §§ 241 and 242 are crimes of violence for purposes of 18 U.S.C. § 924(c). *See United States v. Acosta,* 470 F.3d 132 (2d Cir.2006) (per curiam). In this companion summary order, we address the other issues raised by Defendants–Appellants Sylvestre Acosta and Paul Skinner on appeal. We assume familiarity with the underlying facts, procedural history and issues on appeal.

### I. Was there sufficient evidence to support the convictions?

We review a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo. See United States v. Reyes,* 302 F.3d 48, 52–53 (2d Cir.2002). We must affirm the conviction if the evidence, when viewed in the light most favorable to the government, would permit a rational jury to find the essential elements of the crime beyond a reasonable doubt. *See United States v. LaSpina,* 299 F.3d 165, 180 (2d Cir.2002). This requirement imposes a heavy burden on the defendant. *See United States v. Pipola,* 83 F.3d 556, 564 (2d Cir.1996).

Both Skinner and Acosta claim that there was insufficient evidence to support their convictions for conspiracy to violate civil rights under color of law in violation of § 241. We disagree. At trial the government proved the substantive charges against Skinner and Acosta of violating civil rights under color of law, and aiding and abetting others in the commission of this crime in violation of § 242 and 18 U.S.C. § 2. The proof of these substantive charges constituted some of the proof of the § 241 conspiracy charges. This proof

included, *inter alia,* evidence that (1) Skinner falsified information for at least five search warrants and submitted false informant payment forms; (2) Skinner and Acosta participated in obtaining and executing at least three search warrants based on false information; and (3) Acosta received stolen money from these searches and stole property during two of these searches. The government also presented evidence of additional conduct by Skinner and Acosta in furtherance of the conspiracy that was not a part of the § 242 offenses, including Skinner's and Acosta's participation in a warrantless raid of a hotel room and the execution a search warrant on a home, during both of which money was stolen, and Acosta's stealing from a suspect during a traffic stop. Furthermore, the government presented evidence that Skinner, Acosta and their co-conspirators attempted to cover up the conspiracy, and agreed among themselves not to cooperate with the FBI. Viewing this evidence in a light most favorable to the government, a rational jury could have found beyond a reasonable doubt that Skinner and Acosta knew of the conspiracy to deprive persons of their civil rights, and knowingly and intentionally joined, and participated in, the conspiracy. *See United States v. Morgan,* 385 F.3d 196, 206 (2d Cir.2004).

■ Skinner also claims that there was insufficient evidence to support his misdemeanor conviction under § 242 and § 2. This conviction was based on the discovery of a laptop computer in Skinner's home that had been taken during the search of a suspect's home. Skinner argues that there was no evidence that he acted willfully, because there was no proof that he removed the laptop from the suspect's home. We disagree. The government presented evidence that (1) the laptop was found in Skinner's home, (2) officers were overheard arguing over who would get the laptop, (3) Skinner had purchased personal accessories for this laptop, (4) Skinner was the officer in charge of securing evidence during this raid, and (5) Skinner's superiors directly refuted his explanation that he had the laptop because he was analyzing it as part of an international drug investigation. A rational jury could have found beyond a reasonable doubt either that Skinner stole the laptop, or that he aided and abetted the theft of the laptop. *See United States v. Labat,* 905 F.2d 18, 23 (2d Cir.1990).

■ Finally, Skinner argues that there was insufficient evidence to support his felony conviction for using or carrying a firearm during the commission of a crime of violence in violation of § 924(c), which was based on his underlying § 241 conspiracy conviction. Skinner essentially argues that, even though he was a police officer participating in the execution of search warrants and raids, the government presented insufficient evidence that he carried a firearm during these activities. We disagree. The government presented evidence that it was standard police procedure was for all members of a search team to have their weapons drawn and to keep them drawn while entering a location in connection with drug activity. This fact alone was sufficient for a rational jury to conclude beyond a reasonable doubt that Skinner used or carried a firearm in furtherance of the conspiracy.

## II. Did the indictment properly allege violations of § 242?

Acosta argues for the first time on appeal that the indictment failed to state an actionable offense. Acosta specifically claims that a law enforcement officer's theft of property from a victim does not constitute a violation of the Fourteenth Amendment, based on precedent from 42

U.S.C. § 1983. An argument that an indictment fails to state an offense may be brought at any time while the case is pending, but when this argument is "urged for the first time on appeal, indictments ... are construed more liberally ... and every intendment is then indulged in support of the sufficiency." *United States v. Davila*, 461 F.3d 298, 308 (2d Cir.2006) (internal quotation marks omitted); *see also* Fed.R.Crim.P. 12(b)(3)(B). We review this argument for plain error. *See United States v. Glick*, 142 F.3d 520, 523 (2d Cir.1998).

■ There was no plain error here. In fact, Acosta's argument is contrary to the well-established law of our Circuit. In *United States v. McClean*, 528 F.2d 1250 (2d Cir.1976), for example, we held that police officers acted under color of law when they stole and extorted proceeds of narcotics sales from targets of their investigations in violation of the Fourteenth Amendment, and thus in violation of § 242. *Id.* at 1252, 1256; *see also United States v. Giordano*, 442 F.3d 30, 43 (2d Cir.2006) (holding that "[t]he color of law element may be satisfied by the fact that an official gains access to the victim in the course of official duty") (citing *McClean*, 528 F.2d at 1255). Regardless, the indictment charged defendants with unlawfully depriving persons of *both* their Fourteenth and Fourth Amendment rights to be free from illegal searches and seizures. Acosta does not address the fact that the Fourth Amendment violations alone render the indictment valid.

**III. Did the § 924(c) charge and using a firearm during civil rights violations expose Acosta to double jeopardy?**

■ For the first time on appeal Acosta argues that if the jury found he used a firearm in the course of the two substantive § 242 counts, and these § 242 counts contributed to the conspiracy conviction under § 241, then these § 242 counts could not also support his conviction for the § 924(c) violation corresponding to the § 241 conspiracy count. Otherwise, Acosta argues, this would constitute double jeopardy with respect to his two other § 924(c) convictions, which correspond directly to the two substantive § 242 counts. We disagree. The conspiracy conviction under § 241 is a separate offense from the substantive § 242 offenses, *see United States v. Campbell*, 300 F.3d 202, 216 (2d Cir.2002), and as explained in Part I, *supra*, the conspiracy charge involved more and broader conduct than the substantive § 242 offenses. *See United States v. Salameh*, 261 F.3d 271, 279 (2d Cir.2001). Therefore, the § 924(c) conviction related to the § 241 conspiracy may have included different acts than the two § 924(c) convictions related to the two specific § 242 offenses.

Moreover, Acosta did not request a jury instruction limiting the jury's consideration of what conduct would support the § 924(c) conviction related to the § 241 conspiracy to conduct *other than* the conduct supporting the two § 924(c) convictions related to the substantive § 242 convictions. We have held that, even in light of *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), if an "impermissible basis of conviction arises from an insufficiency of evidence and a valid basis remains on an alternative theory, a defendant must request the trial judge not to submit the invalid basis to the jury or else the objection will be deemed waived." *United States v. Washington*, 861 F.2d 350, 352 (2d Cir.1988); *see also Salameh*, 261 F.3d at 279 n. 5. Acosta made no such objection before the trial court. Because the conspiracy involved broader conduct than the substantive of-

fense, and the jury could have reasonably convicted on this conduct, there was no error.

## IV. Did the district court err in giving a *Pinkerton* jury charge?

■ Acosta argues that the district court's *Pinkerton* charge constructively amended the indictment by allowing the jury to find that Acosta could be held responsible for the substantive crimes committed by his co-conspirators if those crimes were reasonably foreseeable consequences of acts he committed in furtherance of the conspiracy. Acosta claims that unless the Government specified in the indictment that it intended to pursue a *Pinkerton* theory of liability, a constructive amendment of the indictment would result.

Aside from the fact that there was sufficient evidence to support a rational jury finding that Acosta himself engaged in the criminal violation of civil rights under § 242, *see* Part I *supra*, there is no legal support for Acosta's proposition that the evidence presented and jury instructions modified the essential elements of the offense charged. *See United States v. Bryser*, 954 F.2d 79, 86 (2d Cir.1992). Acosta's indictment specifically charged that "Acosta *and another*" committed the unlawful actions described in the substantive § 242 counts, and also included a charge that he conspired to commit a violation of civil rights in violation of § 241. Acosta was thus clearly charged with conspiring with others to violate civil constitutional rights and actually depriving certain victims of their constitutional rights. The *Pinkerton* charge did not subject Acosta to liability for any crime other than § 242, it merely supplied another basis on which liability for this offense might be determined. Therefore, Acosta was "fully informed of the nature of the charges against him and was convicted of the crimes with which he was charged." *United States v. Berger*, 224 F.3d 107, 117 (2d Cir.2000).

## V. Was jury instruction on "use" under 18 U.S.C. § 242 plainly erroneous and prejudicial?

■ Acosta argues that the district court erred in instructing the jury on the definition of "use" in § 242, because it was broader than the definition of "use" in § 924(c), and thus claims that his two § 242 convictions and his two corresponding § 924(c) convictions must be reversed. Acosta did not object to the definition of "use," and therefore, we review the district court's jury instruction on this issue for plain error. *See United States v. Carr*, 424 F.3d 213, 219 (2d Cir.2005).

Acosta cites no authority for the proposition that the term "use" of a weapon under § 242 was intended to have the same meaning as "use" of a weapon under § 924(c). Regardless, many portions of the district court's description of term "use" in the portion of the charge on § 242 and the description of "use" in the portion of the charge on § 924(c) were similar. Thus, viewing the charge as a whole, the "use" instruction was not plainly erroneous. *See United States v. Carr*, 880 F.2d 1550, 1555 (2d Cir.1989).

## VI. Did the defendants receive a fair trial?

■ Skinner argues that his Sixth Amendment right to a fair trial was denied because of the district court's management of the trial and rulings on objections. Acosta additionally argues that the district court committed reversible error in its preliminary charge to the jury because it did not instruct the jury that it must find Acosta and Skinner not guilty if the prosecution failed to establish the elements of the crimes charged beyond a reasonable doubt.

These arguments are wholly without merit. Skinner does not explain how any of the district court's rulings were in error.

To the contrary, the district court simply ran a trial in which Skinner and Acosta won some objections and lost others, and our review of the record yields no evidence whatsoever that the trial judge was biased. Moreover, the five times that the district court instructed the jury that it must find Acosta and Skinner not guilty if the government fails to meet its burden of proof in its final jury charge more than made up for any omission of this instruction in the preliminary jury charge.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the companion per curiam opinion filed today, the judgments of conviction are affirmed.